UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE M. GREENWOOD,

                Plaintiff,

   v.

ARTHREX, INC.,
TE CONNECTIVITY CORPORATION f/k/a
HEAT SHRINK INNOVATIONS, LLC, and
PRECISON EDGE SURGICAL PRODUCTS
COMPANY, LLC,

                Defendants.

**DECISION AND ORDER**
21-CV-1101S

## I.    Introduction

This is a removed diversity action alleging product liability.  Plaintiff is a New York resident (Docket No. 13, 2d Am. Compl. ¶ 1).  Defendant Arthrex, Inc. ("Arthrex"), is a corporation with Florida as its principal place of business (id. ¶ 3).  Defendant TE Connectivity Corporation ("TE") has its principal place of business in Texas (id. ¶ 6).  Precision Edge Surgical Products Company LLC ("Precision Edge") has its principal place of business in Michigan (id. ¶ 8).  Plaintiff alleges that a medical device manufactured by Arthrex (with components made by TE and Precision Edge) injured her during a surgical procedure.

Before this Court are four related Motions.  TE (Docket No. 18) and Precision Edge (Docket No. 20) each moved to dismiss; Plaintiff filed Cross-Motions seeking jurisdictional discovery from Precision Edge (Docket No. 22) and TE (Docket No. 23) as part of her responses to the Motions to Dismiss.

Addressing Plaintiff's jurisdictional discovery Cross-Motions first, her Cross-Motion seeking discovery from TE (Docket No. 23) is **denied** because TE did not seek dismissal on jurisdictional grounds and Plaintiff has not sought jurisdictional (or any other) discovery from TE (Docket No. 25, TE Reply Memo. at 1 n.1).  For the reasons stated herein, Plaintiff's Cross-Motion for Jurisdictional Discovery from Precision Edge (Docket No. 22) also is **denied**.

As for the dispositive Motions, Precision Edge's Motion to Dismiss (Docket No. 20) is **granted** and TE's Motion to Dismiss (Docket No. 18) also is **granted**.

## II.    Background

### A.  Facts and the Second Amended Complaint (Docket No. 13)

Plaintiff was injured during a surgical procedure by an Arthrex Burr device (the "device"), designed by Arthrex with components made by TE and Precision Edge. Precision Edge allegedly made the inner tube and outer tube components of the device (see Docket No. 22, Pl. Memo. at 2), while TE allegedly made the heat shrink tubing for the device (see Docket No. 23, Pl. Memo. at 2).

Plaintiff alleges that the device was purchased in New York and, on or about October 25, 2018, was used in a surgical procedure in this state that resulted in permanent and serious injuries to her (Docket No. 13, 2d Am. Compl. ¶¶ 10, 16, 40, 68). On November 6, 2018, her doctor told Plaintiff that there had been a "mechanical malfunction of the Arthrex surgical instrument identified by the manufacturer that resulted in a significant heating of the shaft of the burr that was most likely the cause of the anterior thermal on her shoulder" (id. ¶ 17; see also id. ¶¶ 26, 45, 54, 73, 82).

Plaintiff now alleges in her Second Amended Complaint twelve causes of action asserting several theories of liability:  strict product liability (defective design, defective manufacture, and failure to warn), negligence, and breach of warranty (express and implied) (Docket No. 13, 2d Am. Compl.; see Docket No. 22, Pl. Memo. at 2).  The First Cause of Action alleges Arthrex's negligence in keeping the device on the market (Docket No. 13, 2d Am. Compl. ¶¶ 10-21).  The Second Cause of Action alleges Arthrex was negligent for putting the device into the stream of commerce (id. ¶¶ 23-30).  The Third Cause of Action alleges Arthrex breached express and implied warranties (id. ¶¶ 32-33). The Fourth Cause of Action alleges Arthrex failed to warn the defects of the product (id. ¶¶ 35-38).

Plaintiff repeats similar allegations against TE and Precision Edge as alleged against Arthrex (see Docket No. 20, Precision Edge Memo. at 9 n.3).

The Fifth Cause of Action alleges TE designed a component part of the Arthrex device which caused it to malfunction (id. ¶¶ 41-42, 44).  TE was negligent for keeping the device (with its component) on the market (id. ¶¶ 40-49).  The Sixth Cause of Action alleges TE also was negligent for putting the device into the stream of commerce (id. ¶¶ 51-58).  The Seventh Cause of Action alleges TE also breached express and implied warranties (id. ¶¶ 60-61).  The Eighth Cause of Action alleges TE failed to warn the defects of the device (id. ¶¶ 63-66).

The Ninth Cause of Action alleges Precision Edge designed two component parts of the Arthrex device which also caused it to malfunction (id. ¶¶ 69-70, 72).  Precision Edge was negligent for keeping the device (with its component) on the market (id. ¶¶ 68-77).  The Tenth Cause of Action alleges Precision Edge also was negligent in putting the

device into the stream of commerce (id. ¶¶ 79-86). The Eleventh Cause of Action alleges Precision Edge breached express and implied warranties (id. ¶¶ 88-89). Finally, the Twelfth Cause of Action alleges Precision Edge failed to warn the defects of the device (id. ¶¶ 91-94).

       B.  Proceedings to Motion Practice

Plaintiff originally sued Arthrex in New York State Supreme Court (Docket No. 1, Notice of Removal ¶ 2, Ex. A, Tab 1). Arthrex answered (id. Ex. A, Tab 3). On August 2, 2021, Plaintiff filed an Amended Complaint in state court naming Precision Edge and TE as additional Defendants as well as Arthrex (id. ¶ 5, Ex. A, Tab 7).

Precision Edge then removed this action to this Court, with consent of Arthrex and TE (id. ¶ 9, Exs. B, C). Precision Edge claimed that Plaintiff was a New York resident and Defendants were foreign corporations, hence complete diversity among the parties (id. ¶ 10; see also id. ¶ 11 (amount in controversy exceeds $75,000)).  .

TE and Precision Edge moved to dismiss the Amended Complaint on October 28, 2021 (Docket Nos. 6, 7). Meanwhile, Arthrex answered (Docket No. 8). On November 10, 2021, Plaintiff filed her Second Amended Complaint (Docket No. 13). On November 12, 2021, this Court dismissed the Motions to Dismiss as moot because of this amended pleading (Docket No. 17).

Arthrex meanwhile answered the Second Amended Complaint (Docket No. 19).

C.  Motions to Dismiss and For Discovery

On November 23 and 24, 2021, TE (Docket No. 18[1]) and Precision Edge (Docket No. 20[2]) moved to dismiss the Second Amended Complaint.  Responses to these Motions were due by December 13, 2021, and replies initially were due by December 20, 2021 (Docket No. 21).

Plaintiff responded to both Motions to Dismiss with her Cross-Motions for discovery (Docket Nos. 22, 23).  Defendants' responses to these Cross-Motions were due by December 29, 2021, and Plaintiff's replies to the Motions to Dismiss were extended to January 5, 2022 (Docket No. 24).

Following timely responses and replies when filed, all four Motions were deemed submitted and oral argument deemed unnecessary.

### III.    Discussion

A.  Applicable Standards

1.  Motion to Dismiss

Precision Edge and TE move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

---

[1]In support of TE's Motion to Dismiss, it submits its Memorandum of Law, Docket No. 18; and its Reply Memorandum, Docket No. 25.  This Reply responded to Plaintiff's discovery Cross-Motion (Docket No. 23).

In response and as her Cross-Motion for Jurisdictional Discovery from TE, Plaintiff submitted her Memorandum of Law (Docket No. 23).  Plaintiff did not reply to her purported Cross-Motion.

[2]In support of Precision Edge's Motion to Dismiss, it submits its Memorandum of Law and the Declaration of Todd Fewins, president of Precision Edge, Docket No. 20; and its Reply Memorandum, Docket No. 26.  This Reply responded to Plaintiff's Cross-Motion (Docket No. 22).

In her Cross-Motion for Discovery, Plaintiff also opposed Precision Edge's Motion in her Memorandum of Law, Docket No. 22.  She did not reply.

Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555. As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

### 2. Choice of Law

In diversity cases, federal court applies substantive law of the jurisdiction where the Court sits, here of New York, see Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); see Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (including state's choice of law regime); see also Giarcla v. Coca-Cola Co., No. 17CV359, 2021 WL 1110397, at *3-4 (W.D.N.Y. Mar. 23, 2021) (Skretny, J.). Under New York choice of law rules, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the jurisdiction involved." Matter of Allstate Ins. Co., 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).

In personal injury actions, New York generally applies the law of the jurisdiction in which the injury occurred. See Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993). Here, the incident occurred in New York. Both sides cite New York law, in particular provisions of New York product liability and negligence law, without citing law from anywhere else. There is not conflict; thus, New York substantive law applies.

This Court first will address Plaintiff's Motions seeking jurisdictional discovery (Docket Nos. 22, 23), then Precision Edge's (Docket No. 20) and TE's (Docket No. 18) Motions to Dismiss.

>  B.  Jurisdictional Discovery (Docket Nos. 23, 22)

>>  1.  Applicable Standards

Jurisdictional discovery is permitted when Plaintiff "has 'made a sufficient start toward establishing personal jurisdiction,' such that it appears there may be a colorable jurisdictional claim," McDonough v. Cycling Sports Group, Inc., 392 F. Supp.3d 320, 329 (W.D.N.Y. 2019) (Wolford, J.) (quoting Hollins v. U.S. Tennis Ass'n, 469 F. Supp.2d 67, 70 (E.D.N.Y. 2006) (Docket No. 22, Pl. Memo. at 10)); Peerless Ins. Co. v. Broan-Nutone, LLC, No. 19CV1699, 2020 WL 4194457, at *8 (W.D.N.Y. July 21, 2020) (Crawford, J.) (quotations omitted) (Docket No. 26, Precision Edge Reply Memo. at 6); cf. Department of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. 922, 929-30 (S.D.N.Y. 1990) (to obtain discovery, plaintiff must demonstrate that facts may exist to defeat a motion to dismiss) (Docket No. 22, Pl. Memo. at 11).

This Court has discretion to allow limited jurisdictional discovery, Resetarits Constr. Corp. v. E&N Constr., Inc., No. 19CV1258, 2021 WL 1699727, at *13 (W.D.N.Y. Apr. 29, 2021) (Skretny, J.); see Sayles v. Pacific Eng'g & Constr., Ltd., No. 08CV676, 2012 WL 895944, at *4 (W.D.N.Y. Mar. 15, 2012) (Scott, Mag. J.).  This discretion is not abused by denial of jurisdictional discovery where Plaintiff fails to make a prima facie showing, Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998).  When permitted, the scope of that discovery also is within this Court's discretion, see Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee, 456 U.S. 694, 707, 102 S.Ct. 2099,

72 L.Ed.2d 492 (1982); Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 575-76 (2d Cir. 1996).

Jurisdictional discovery has been ordered "where plaintiff [has] made less than a prima facie showing [of jurisdiction] but 'made a sufficient start toward establishing personal jurisdiction,'" Hollins, supra, 469 F. Supp.2d at 70-71 (quoting Uebler v. Boss Media, 363 F. Supp.2d 499, 506-07 (E.D.N.Y. 2005)).  Or when a "threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction," Ayyash v. Bank Al-Madina, No. 04 Civ. 9201, 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006).

Where a plaintiff alleges more than conclusory statements of jurisdiction (even without supporting facts), jurisdictional discovery has been allowed, see Hollins, supra, 469 F. Supp.2d at 71 (discussing Second Circuit cases when jurisdictional discovery is permitted).  The court in Hollins concluded that plaintiffs Cecil Hollins and Sande French alleged sufficient facts to warrant jurisdictional discovery from defendants and distinguished "between allegations that are 'insufficiently developed' warranting discovery and those that are 'sparse' and 'conclusory' requiring dismissal," id. at 71-72.  Hollins and French made a sufficient showing of general jurisdiction under New York CPLR 301 to justify jurisdictional discovery from the International Tennis Federation by documenting the role of the tennis federation globally and in the U.S. Open, id. at 72-73.  The court then concluded that Hollins and French satisfied CPLR 302(a)(3)(i) to warrant discovery from defendant Michael Morrissey, the federation's administrator of officiating, id. at 76-78, 68, 69.

Prior to compelling jurisdictional discovery, personal jurisdiction must be supported with sufficient factual allegations, Penachio v. Benedict, 461 F. App'x 4, 5 (2d Cir. 2012) (summary Order) (Docket No. 20, Precision Edge Memo. at 3).  Without a full-blown evidentiary hearing, Plaintiff need only make a prima facie showing of personal jurisdiction over the Defendant, considering the Complaint in the light most favorable to Plaintiff and resolving all doubts in her favor, Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 126 (2d Cir. 2008); see Metropolitan Life, supra, 84 F.3d at 566-67 (Docket No. 22, Pl. Memo. at 2).  As non-movant, Plaintiff's allegations are taken as true and any factual disputes are resolved in her favor, 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1351, at 299 (Civil 3d ed. 2004) (see id. at 2-3).

Since jurisdictional discovery requires consideration of issues of personal jurisdiction, Plaintiff may submit affidavits and documentary evidence in addition to the Complaint in support of jurisdictional discovery, see Hollins, supra, 469 F. Supp.2d at 70 n.2.

"Failure to make out a prima facie case does not necessarily bar jurisdictional discovery," Peerless Ins., supra, 2020 WL 4194457, at *8 (citing Ehrenfeld v. Mahfonz, 489 F.3d 542, 550 n.6 (2d Cir. 2007)).  Jurisdictional discovery is denied, however, where the plaintiff offers "only speculations or hopes . . . that further connections to [the forum] will come to light in discovery," Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen, No. 12 Civ. 6390(JPO), 2013 WL 1775440, at *10 (S.D.N.Y. Apr. 25, 2013) (alterations in original); Peerless Ins., supra, 2020 WL 4194457, at *8.

### 2.   Parties' Contentions

Precision Edge argues in its Motion to Dismiss that this Court lacks personal jurisdiction over it (Docket No. 20, Precision Edge Memo. at 4-9).  It states that it has no contacts with New York (id. at 5).  Precision Edge claims that Plaintiff provided no factual basis for asserting that Precision Edge transacted business in New York (id.; but cf. Docket No. 13, 2d Am. Compl. ¶ 8).  Precision Edge also points out that Plaintiff has not alleged that Precision Edge (a Delaware LLC based in Michigan without customers or supplied goods in New York) performed any acts in New York (Docket No. 20, Precision Edge Memo. at 5).  Precision Edge claims that it is.  Plaintiff instead alleged Precision Edge performed acts outside of New York that led to injury in the state (id.).

Plaintiff replies that this Court has personal jurisdiction over Precision Edge (Docket No. 22, Pl. Memo. at 2-10).  Absent jurisdictional discovery or an evidentiary hearing, she claims she states a prima facie claim of jurisdiction and Precision Edge's Motion should be denied (id. at 3-4).  Citing N.Y CPLR 302(a)(3), Plaintiff concludes that she alleged tortious act outside of New York that caused her injury within for long arm jurisdiction in this state (id. at 4-5).

Alternatively, Plaintiff requests discovery for personal jurisdiction over Precision Edge (id. at 10-11).  She seeks discovery whether the Arthrex device was sold and utilized in New York, whether Precision Edge parts ended up in surgical medical supplies in New York every year, and/or whether Precision Edge obtains substantial revenue from the sale and distribution of their products in New York (id. at 11).

Precision Edge denies Plaintiff's entitlement to jurisdictional discovery because of the absence of "a sufficient start toward establishing jurisdiction, such that it appears there

may be a colorable jurisdictional claim," <u>Peerless Ins.</u>, <u>supra</u>, 2020 WL 4194457, at *8 (Docket No. 26, Precision Edge Memo. at 6-8, 6).  Taking Plaintiff's allegations favorable to her, Precision Edge concludes that she has not shown that it purposefully availed itself of New York in connection with her claims to make a colorable claim of jurisdiction or justify jurisdictional discovery (<u>id.</u> at 7).

### 3.  Jurisdictional Discovery—TE (Docket No. 23)

Plaintiff purportedly cross-moved for jurisdictional discovery from TE (<u>cf.</u> Docket No. 23).  As noted by TE (Docket No. 25, TE Reply Memo. at 1 n.1), Plaintiff did not seek discovery and TE's motion did not invoke the lack of this Court's jurisdiction over it to warrant discovery.  As a cross-motion, Plaintiff's Motion for Discovery (Docket No. 23) is **dismissed**.

### 4.  Jurisdictional Discovery—Precision Edge (Docket No. 22)

For Plaintiff to obtain jurisdictional discovery, she needs to show a colorable jurisdictional claim.  Plaintiff alleges that Precision Edge is a foreign limited liability company duly authorized to transact business in New York (Docket No. 13, 2d Am. Compl. ¶ 7).  She alleges that Precision Edge's inner tube assembly and outer tube assembly of the Arthrex device was purchased and used in New York (<u>id.</u> ¶¶ 68-71, 72).  Later, she alleges that Precision Edge's website announced that it is a "world-renowned contract manufacturer of fine surgical components, cutting tools and accessories" (<u>id.</u> ¶ 81), claiming that it made a thousand different types of surgical burrs (<u>id.</u>).

Plaintiff seeks discovery whether Arthrex's devices were sold and utilized in New York; whether Precision Edge parts ended up in New York (on an annual basis); and whether Precision Edge obtained "substantial revenue" from the sale and distribution of

12

products in New York (Docket No. 22, Pl. Memo. at 11).   Contemplating the sought discovery listed above as discovery requests, Plaintiff's first category presumes that all Arthrex's device contains Precision Edge parts, so identifying the sales and use of Arthrex's device is equivalent to the use of Precision Edge parts in New York.   The record here does not show this equivalence.   The next two requests focus on Precision Edge's transactions in New York.

Plaintiff submits only the Complaint and her Memorandum of Law in support of jurisdictional discovery.   She did not submit an affidavit or other documents to buttress personal jurisdiction of Precision Edge in New York.   The Complaint (as related above) is sparse and conclusory regarding Precision Edge's contacts with New York (cf. Docket No. 20, Precision Edge Memo. at 9-12 (Plaintiff making conclusory allegations, failing to satisfy pleading requirements)).   Plaintiff has not made a sufficient start toward establishing Precision Edge's personal jurisdiction to warrant discovery.   She has not raised speculations or hopes of New York jurisdiction over Precision Edge.

Plaintiff's Motion for Jurisdictional Discovery (Docket No. 22) is **denied**.   This Court next considers moving Defendants' Motions to Dismiss, starting with Precision Edge's Motion (Docket No. 20).

### C.  Precision Edge's Motion to Dismiss (Docket No. 20)

#### 1.  Applicable Standards—Personal Jurisdiction

Precision Edge also moves to dismiss under Rule 12(b)(2).   Under that Rule, Plaintiff bears the burden of demonstrating the existence of personal jurisdiction, Penachio, supra, 461 F. App'x at 5 (Docket No. 20, Precision Edge Memo. at 4); Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).   To defeat a Motion to

Dismiss for want of personal jurisdiction, Plaintiff must demonstrate by the preponderance of the evidence that in personam jurisdiction exists.  If only on pleadings and without discovery or hearing (as here), Plaintiff need show only a prima facie case. Volkswagenwerk Aktiengesellscharft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).  A prima facie allegation of jurisdiction, Plaintiff needs to plead in good faith legally sufficient allegations of jurisdiction, Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); Jazini, supra, 148 F.3d at 184.

Federal personal jurisdiction against a non-domiciliary corporation involves a two-part analysis, Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp.2d 458, 465 (S.D.N.Y. 2008).

> "First, the Court must look to the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether in personam jurisdiction exists over the nonresident defendant."  Eastman Kodak Co. v. [Kyocera] Corp. No. 10cv6334, Docket No. 48, Order at 4, 2011 U.S. Dist. LEXIS 40486, at *7 (W.D.N.Y. Apr. 13, 2011) (Siragusa, J.).  "Second, if the relevant statute allows the court to exercise jurisdiction, the court must then determine 'whether the exercise of jurisdiction comports with due process,'" id.; Savin v. Ranier, 898 F.2d 304, 306 (2d Cir.1990)."

Sayles, supra, 2012 WL 895944, at *3; see also Eastman Kodak Co. v. Kyocera Corp., No. 10CV6334, 2011 WL 1432038, at *2-3 (W.D.N.Y. Apr. 13, 2011).

Pertinent to the claims in this case, under New York Civil Practice Law and Rules § 302,

> "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> . . .

"3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce, . . ."

N.Y. CPLR 302(a)(3).

For long-arm jurisdiction under CPLR 302(a)(3), a defendant must commit a tortious act outside of New York, the cause of action must arise from that tort, and the tort needs to cause injury in New York, Albino v. Global Equip. USA, Ltd., No. 14CV6519, 2018 WL 3537060, at *7 (W.D.N.Y. July 23, 2018) (Telesca, J.) (Docket No. 22, Pl. Memo. at 5).

### 2.   Precision Edge's and Plaintiff's Contentions

Precision Edge denies any basis for personal jurisdiction in New York against it under the CPLR (Docket No. 20, Precision Edge Memo. at 4-6).  It claims that exercising personal jurisdiction over it also violates due process (id. at 7-9).  Precision Edge dismisses the reference in the Second Amended Complaint to its website promotion about burr devices (Docket No. 13, 2d Am. Compl. ¶ 81) because that was not the type of component parts sold to Arthrex (Docket No. 20, Precision Edge Memo. at 8).  Further, it claims that its passive website merely imparted information and that was insufficient to establish personal jurisdiction under CPLR 302 (id. at 8-9, citing Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 377, 998 N.Y.S.2d 720, 726 (2014)).  Precision Edge also contends

that the Amended Complaint made only conclusory allegations, with repetition of allegations against Arthrex that were not applicable to Precision Edge (id. at 9-12, 9 n.3).

Plaintiff alternatively responds that she alleged personal jurisdiction over Precision Edge (Docket No. 22, Pl. Memo. at 4-10).  To meet the requirements of CPLR 302(a)(3), she claims that she alleged a tortious act outside of New York, that her cause of action arose from the tort, and that Plaintiff was injured in New York (id. at 5-6).  She contends that she alleged that component parts of the Arthrex device was defectively designed, manufactured, tested, and sold by Precision Edge and placed the component parts into the stream of commerce (id. at 7).  She extrapolates from Arthrex's global sales to extend personal jurisdiction to one of its component suppliers, Precision Edge (id. at 7-8).  Analogizing the facts to those in McDonough, supra, 392 F. Supp.3d at 327-28, where the supplier defendant worked closely with the principal manufacturer, Plaintiff argues that Precision Edge worked closely with Arthrex in the design and manufacture of the component parts, knowing that they would be incorporated into Arthrex's device that would be sold and used in New York (id. at 8).  This allegation, however, is not stated in the Second Amended Complaint, an affidavit, or in other evidence manifesting this working relationship.

In reply, Precision Edge states that it did not purposefully avail itself of New York and has no case-related contacts with New York (Docket No. 26, Precision Edge Reply Memo. at 2).  It argues that Plaintiff fails to address the absence of due process in exercising personal jurisdiction over Precision Edge (id.).  Precision Edge next argues Plaintiff has not satisfied requirements under the New York long-arm statute (id. at 4-6).  Citing Peerless Insurance, Precision Edge analogizes that case to Greenwood's (id. at 5;

see Docket No. 22, Pl. Memo. at 9), where the Peerless defendants did not ship components into New York but to the manufacturer in a second state which assembled and distributed nationally.  While it was foreseeable the component in Peerless would arrive in New York, Precision Edge argues that the component manufacturers in that case (as it did here) did not take direct actions targeting New York or purposefully availing themselves of New York to warrant application of CPLR 302.  Peerless Ins., supra, 2020 WL 4194457, at *5 (Docket No. 26, Precision Edge Reply Memo. at 5).

       3.  Analysis

      This Court agrees with Precision Edge that Plaintiff has not alleged that the component manufacturer purposely availed itself of the benefits of the laws of New York (id.).  Greenwood's case is like Peerless Insurance, where she established it was foreseeable that a component manufacturer like Precision Edge would have its parts in a device sold or used in New York.  Plaintiff has not shown, however, that Precision Edge availed itself of New York law such that it could anticipate being haled before New York courts.  She has not alleged that Precision Edge knew or should have known that its parts were destined for New York or that Precision Edge attempted to reach the New York market.  Peerless Ins., supra, 2020 WL 4194457, at *5 (quoting Capitol Records, LLC v. Video Egg, Inc., 611 F. Supp.2d 349, 363-64 (S.D.N.Y. 2009)).  As noted in another case cited in Peerless, Plaintiff has not alleged the "discernable effort" directly or indirectly by Precision Edge to serve the New York market, id. (quoting Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F. Supp.3d 97, 107 (S.D.N.Y. 2015)).

      Plaintiff argues that there was evidence that Precision Edge worked close enough with Arthrex that it was foreseeable that Precision Edge's components would be sold and

used in New York to extend jurisdiction to that party (Docket No. 22, Pl. Memo. at 8).  The Complaint and her Memorandum of Law (if properly considered for allegations in a Motion to Dismiss on jurisdictional grounds), however, does not establish this working relationship such as to extend New York's jurisdiction over Precision Edge.  The Second Amended Complaint does not allege a working relationship between Arthrex and Precision Edge.  These documents do not show evidence of Precision Edge's working arrangement with Arthrex.

McDonough is factually distinguishable from the record in this case.  As Plaintiff observes (Docket No. 22, Pl. Memo. at 8), Plaintiff Jon McDonough was thrown from his bicycle when the cycling fork, manufactured for defendant Cycling Sports Group (or "CSG") by defendant Advanced International Multitech Co. (or "AIM"), failed and caused the front wheel to fall off, 392 F. Supp.3d at 323.  Judge Wolford held there that jurisdictional discovery was warranted, id. at 327-29, denying without prejudice AIM's Motion for Summary Judgment, id. at 329.  Judge Wolford found that, based upon the record there (including evidence of AIM's dealers and evidence of the sales scope of CSG), AIM worked closely with CSG to design and manufacture cycling forks, knowing that the cycling forks would be incorporated into bicycles to be sold in New York and that the evidence showed AIM's products had worldwide sales, id. at 324, 327-28 (see id.).

First, the plaintiffs in McDonough sought jurisdictional discovery in opposition to a summary judgment motion, with an evidentiary record far more developed than the record for the Motion to Dismiss here.  Second, Judge Wolford did not hold that plaintiffs there established personal jurisdiction over AIM; instead, she concluded that she could not find as a matter of law that the requirements of CPLR 302(a)(3)(ii) were not met, but issues

of fact remain "whether AIM [had] sufficient contacts with the State of New York to satisfy the requirements of due process," <u>McDonough</u>, <u>supra</u>, 392 F. Supp.3d at 328.   As discussed above regarding jurisdictional discovery, plaintiffs need not allege prima facie case for personal jurisdiction to obtain discovery.

Plaintiff Leslie Greenwood here needs to establish prima facie case for personal jurisdiction over Precision Edge.   Plaintiff merely alleges that Precision Edge provided components for Arthrex's devices, and that those devices were sold and used in New York, concluding that there is personal jurisdiction over Precision Edge in New York as a result.   These barebone allegations are not legally sufficient to allege personal jurisdiction in New York.   Greenwood has not added evidence to support her allegation of personal jurisdiction.   As concluded above, she has not shown enough to warrant jurisdictional discovery to uncover supporting evidence.   Under New York's long-arm statute, Plaintiff therefore fails to establish personal jurisdiction over nonresident Precision Edge. Precision Edge's Motion to Dismiss (Docket No. 20) is **granted**.

Since the CPLR does not allow this Court to exercise long-arm jurisdiction over Precision Edge, this Court need not consider whether the exercise of that jurisdiction comports with constitutional due process, <u>see, e.g.</u>, <u>Sayles</u>, <u>supra</u>, 2012 WL 895944, at *3.   Note, that Plaintiff alleged minimum contacts Precision Edge has with New York only from the sale and use of Arthrex devises containing Precision Edge's components.

This Court next considers TE's Motion to Dismiss for failure to state a claim under New York tort law (Docket No. 18).

D.  TE's Motion to Dismiss (Docket No. 18)

1.  Standards for Product Liability Claims under New York law

a.  Product Liability

New York law recognizes three strict liability theories for product defect:  defective design, defective manufacturing, and failure-to-warn, Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC, 419 F. Supp.3d 490, 506 (E.D.N.Y. 2019); Thomas v. ConAgra Foods, Inc., No. 20CV6239, 2021 WL 1176011, at *2 (W.D.N.Y. Mar. 29, 2021) (Wolford, C.J.).  Under New York law, "the elements of negligence claims based on design defect, manufacturing defect, and failure to warn theories are the same as those under strict liability," Miccio v. Conagra Foods, Inc., 224 F. Supp.3d 200, 208 (W.D.N.Y. 2016) (Wolford, J.).

"'To state a claim for manufacturing defect under theories of strict liability, negligence, or breach of warranty, the plaintiff must allege that (1) the product was defective due to error in the manufacturing process and (2) the defect was the proximate cause of plaintiff's injury,'" id. at 204 (denying motion to dismiss) (quoting Williamson v. Stryker Corp., No. 12 Civ. 7083(CM), 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013) (citation omitted)) (Docket No. 18, TE Memo. at 5; see Docket No. 23, Pl. Memo. at 4-5).

For a design defect claim, "a plaintiff must demonstrate:  '(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing Plaintiff's injury,'" Thomas, supra, 2021 WL 1176011, at *2 (quoting Oden v. Boston Sci. Corp., 330 F. Supp.3d 877, 888 (E.D.N.Y. 2018) (denying dismissal of design defect claim)) (see Docket No. 18, TE Memo. at 6).

To allege a failure to warn claim, plaintiff "'must show:  (1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm,'" Thomas, supra, 2021 WL 1176011, at *3 (quoting Quintana v. B. Braun Med. Inc., No. 17-CV-6614 (ALC), 2018 WL 3559091, at *5 (S.D.N.Y. July 24, 2018)) (see Docket No. 18, TE Memo. at 6-7).

### b.  Negligence

"Under New York law, '[t]o state a claim for manufacturing defect under theories of strict liability [or] negligence . . . the plaintiff must allege that (1) the product was defective due to an error in the manufacturing process and (2) the defect was the proximate cause of plaintiff's injury,'" Rosen v. St. Jude Med., Inc., 41 F. Supp.3d 170, 182 (N.D.N.Y. 2014) (denying motion to dismiss) (quoting without citation Williamson v. Stryker Corp., No. 12 CIV. 7083, 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013)) (see Docket No. 18, TE Memo. 8).  The court in Rosen found that plaintiff Susan Rosen alleged specific manufacturing defects and shown a causal connection of those defects with her injuries, id. at 182-83.

### c.  Breach of Warranties

The court in Miccio observed that under New York law,

"A prima facie claim for breach of express warranty requires the plaintiff to 'show that there was an affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment.'"  Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F.Supp.2d 585, 604 (S.D.N.Y. 2010), amended on reconsideration (Mar. 23, 2010) (citing Nealy v. U.S. Surgical Corp., 587 F.Supp.2d 579, 584 (S.D.N.Y. 2008))."

<u>Miccio</u>, <u>supra</u>, 224 F. Supp.3d at 207; <u>see also</u> <u>Hingos v. W.L. Gore & Assoc.</u>, No. 3:16-CV-969 (NAM/DEP), 2017 WL 3309095, at *6 (N.D.N.Y. Jan. 27, 2017) (<u>See</u> Docket No. 18, TE Memo. at 9.)

> "'To plead a cause of action for breach of express warranty, a plaintiff must allege: (1) the exact terms of the warranty; (2) that the warranty formed part of the basis of the bargain; (3) the warranty was breached and (4) the breach caused injury to the plaintiff.'"

<u>Hingos</u>, <u>supra</u>, 2017 WL 3309095, at *6 (quoting <u>Becker v. Cephalon, Inc.</u>, No. 14 Civ. 3864, 2015 WL 5472311, at *7 (S.D.N.Y. Sept. 15, 2015) (citations omitted)).

To plead a breach of the implied warranty, "a plaintiff 'must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners,' <u>Porrazzo v. Bumble Bee Foods, LLC</u>, 822 F. Supp.2d 406, 420-21 (S.D.N.Y. 2011) (citation omitted)," <u>Bertini v. Smith & Nephew, Inc.</u>, 8 F. Supp.3d 246, 259-60 (E.D.N.Y. 2014) (Docket No. 18, TE Memo. at 9).

The court in <u>Bertini</u> dismissed the breach of implied warranty claim because plaintiffs there had not pled specific facts to support this claim, <u>Bertini</u>, <u>supra</u>, 8 F. Supp.3d at 260.

### 2.   TE's and Plaintiff's Contentions

TE contends Plaintiff fails to state a claim for product liability, negligence, and breach of warranty (Docket No. 18, TE Memo.), renewing the arguments from its first Motion to Dismiss (<u>id.</u> at 1-2; <u>see</u> Docket No. 6, TE Memo.).  TE argues that Plaintiff fails to allege a manufacturing defect by not specifying a defect attributable to TE that caused injuries, thus failing to state a claim (Docket No. 18, TE Memo. at 5).  Plaintiff also failed to identify a design defect to satisfy plausibility requirements of <u>Twombly</u> and <u>Iqbal</u> (<u>id.</u> at

6, citing <u>Oden</u>, <u>supra</u>, 330 F. Supp.3d at 888). Instead, Plaintiff alleged what TE terms "a vague and generalized defect in the component part" made by TE (<u>id.</u>).

As for failure to warn, TE argues that Plaintiff does not allege how TE's warnings for any alleged component may have been inadequate or how they may have been a substantial factor in Plaintiff's injury (<u>id.</u> at 7). Plaintiff pointing to Arthrex's recall of one of its products (not necessarily the Arthrex device used in her surgery) does not allege that the recalled product had TE's component or show that TE breached any duty to supply safe products because the recall did not originate or mention TE (<u>id.</u>). Therefore, TE argues that the Second Amended Complaint fails to state a claim for failure to warn (<u>id.</u> at 8).

As for Plaintiff's negligence allegations, TE asserts that the Second Amended Complaint does not allege a negligence for a defective product because that Complaint fails to state a claim under strict liability theories, which have identical elements for a negligence claim (<u>id.</u>).

TE next argues that the breach of warranty claims also fail (<u>id.</u> at 9-10). Plaintiff does not allege specific defect or failure of TE's products to meet any specific warranty. Plaintiff has not alleged the terms of any express warranty from TE; she merely alleges that TE made certain express and implied warranties breached by TE (<u>id.</u>; <u>see</u> Docket No. 13, 2d Am. Compl. ¶¶ 60, 61). Plaintiff also failed to provide a pre-suit notice of a breach of warranty claim required under New York law (Docket No. 18, TE Memo. at 10, 9), <u>see</u> N.Y. U.C.C. § 2-607(3)(a); <u>Grossman v. Simply Nourish Pet Food Co. LLC</u>, 516 F. Supp.3d 261, 282 (E.D.N.Y. 2021).

Plaintiff again responds that the Second Amended Complaint adequately states claims for products liability and negligence (Docket No. 23, Pl. Memo. at 4-8, 9-11).  She claims that she did not need to plead a specific defect to satisfy Rule 8 under Twombly/Iqbal (id. at 5).  She alleges in the Second Amended Complaint that TE's heat shrink tubing was defectively manufactured and inherently dangerous (id. at 6; see Docket No. 13, 2d Am. Compl. ¶¶ 48, 63), although paragraph 63 of the Second Amended Complaint alleges that Arthrex's device was inherently dangerous without any reference to TE or its heat shrink tubing.  Nevertheless, Plaintiff argues that, at this stage of the litigation, she alleged a plausible strict liability claim (Docket No. 23, Pl. Memo. at 6).  Plaintiff's complaint is that Arthrex's device was designed to grind, cut, shape, and/or trim bone and tissue but it burned skin on her left shoulder, concluding that the device deviated from its intended purpose (id. at 7).  Plaintiff, however, does not attribute this deviation to TE's heat shrink tubing.

Next, Plaintiff claims she alleged TE's negligence (id. at 9-10).  She argues that TE owed a duty of reasonable care to supply safe products (id. at 9).  She concludes that TE breached that duty by supplying Plaintiff with a defective part (id.; Docket No. 13, 2d Am. Compl. ¶¶ 48, 64-65; see also id. ¶ 54).  Plaintiff claims that Arthrex's device malfunctioned here due to TE's heat shrink tube (Docket No. 23, Pl. Memo. at 9; Docket No. 13, 2d Am. Compl. ¶¶ 44-45, 54).

Plaintiff does not address the breach of express or implied warranty (see Docket No. 25, TE Reply Memo. at 1).  TE seeks dismissal of the breach of warranty claims with prejudice (id.).

TE replies that Plaintiff's claims should be dismissed with prejudice and she should not be given leave yet again to amend the Complaint (id. at 2, 7).  TE claims that Plaintiff did not respond to arguments against her design defect and failure to warn theories, deeming them to be abandoned (id. at 1).

TE argues that Plaintiff also needed to allege the specific product was defective from some manufacturing defect and the defect caused the injury (id. at 2-3, citing Teixeria v. St. Jude Med. S.C., Inc., 193 F. Supp.3d 218, 226 (W.D.N.Y. 2016) (Telesca, J.) (citations omitted)).  The Second Amended Complaint, however, alleges that Arthrex's device—and not TE's part—caused Plaintiff's injury (id. at 3).   TE rejects Plaintiff's circumstantial evidence argument (see Docket No. 23, Pl. Memo. at 5-6) because Arthrex's warning label on the device warned against possibility of thermal burns (Docket No. 25, TE Reply Memo. at 5-6; see Docket No. 13, 2d Am. Compl. ¶ 45).

### 3.  Strict Product Liability Theories

For a manufacturing defect claim, Plaintiff alleges TE's components were defectively manufactured (Docket No. 13, 2d Am. Compl. ¶ 51).  She claims that TE's parts caused the Arthrex device to malfunction (id. ¶¶ 44-45, 54).  She does not specify, however, a defect in TE's heat shrink tubing or allege how that part caused the Arthrex device to malfunction.

This differs from the allegation in Miccio wherein that court concluded that plaintiff Jamie Miccio sufficiently plead a manufacturing defect, 224 F. Supp.3d at 205-06.  Miccio alleged that defendant carelessly allowed a specific can of cooking spray that was capable of explosion to be manufactured and distributed, id. at 203-04.  Miccio also claimed there was inadequate testing of that spray can and the manner of the explosion

from its bottom showed the defect, id. at 204.  Finally, she alleged that the spray can deviated from all other like units, id.  The court concluded that this sufficiently plead a manufacturing defect, id. at 205.  Despite not alleging specifics about the manufacturing process, the court found that Miccio plead "a sufficient cause of action for a manufacturing defect," id. at 206, concluding that Miccio alleged the purported defect in the spray can, id. at 206 n.1.

Greenwood's pleading is akin to the complaint in Bertini.  There, the Court held the plaintiffs failed to plead facts showing that the hip replacement system implanted in Louis Bertini deviated from others, 8 F. Supp.3d at 249-50, 257.  Bertini did not allege the implanted specific components suffered from a manufacturing defect, id. at 257.

Ms. Greenwood in this case has not alleged that TE's heat shrink tubing deviated from similar parts.  She makes conclusory allegations that TE designed and manufactured the defective heat shrink tubing.  Although she attributed her injuries to a mechanical malfunction in the Arthrex device "identified by the manufacturer" (Docket No. 13, 2d Am. Compl. ¶ 45; see also id. ¶¶ 73, 17), she has not alleged that this identified malfunction is attributable to TE's parts.  Thus, she fails to allege a manufacturing defect, see Bertini, supra, 8 F. Supp.3d at 257.

As for design defect, Plaintiff needed to allege that TE's part posed a substantial likelihood of harm, that it was feasible to design it in a safer manner, and that the design defect was a substantial factor in causing Plaintiff's injury, Thomas, supra, 2021 WL 1176011, at *2 (Docket No. 18, TE Memo. at 6).  Plaintiff has not made any of these allegations here.  She differs from the plaintiff in Thomas, who alleged that the design of the defective cooking spray can there was designed with vents that did not allow the can

to withstand high temperatures foreseeable during use or storage, id. at *3.  Greenwood merely alleges that conclusion that a design or manufacturing defect of some sort created a malfunction in Arthrex's device and caused her injuries (Docket No. 13, 2d Am. Compl. ¶¶ 48, 54).  She does not contend a different design would have prevented thermal burning.

As for TE's purported duty to warn, Plaintiff alleges that TE knew or should have known that Arthrex's device was defective and should have warned Plaintiff, especially given the recall of Arthrex's device (Docket No. 13, 2d Am. Compl. ¶¶ 64-65).  She does not claim, however, that the recall of the device was due to TE's heat shrink tubing. Furthermore, the recall notice was issued in January 2019, months after Plaintiff's October 2018 surgery (cf. id. ¶¶ 65, 15, 37, 43).  Thus, it is unclear from the recall notice after Plaintiff's surgery that TE should have known of the danger in using the device to warn anyone (see also Docket No. 18, TE Memo. at 7-8).

Plaintiff seems to contend that TE had a duty to warn her about defects in Arthrex's device, not warn about TE's parts within that device.  She fails to allege what warnings TE should have given or how TE's failure to warn caused her injuries, see Hingos, supra, 2017 WL 3309095, at *6.  The court in Hingos held that the failure to warn claim there was insufficient to raise above a speculative level that plaintiff's right to relief and it failed to give fair notice of the claim or the grounds upon which it rested, id.  Greenwood's similar conclusory allegation also fails to state a duty to warn claim.

Therefore, so much of the Fifth and Sixth Causes of Action of the Second Amended Complaint asserting strict product liability theories is dismissed; TE's Motion to Dismiss (Docket No. 18) against these theories is granted.

### 4.  Negligence

Negligence has same elements as strict liability claims.  Since Plaintiff failed to allege strict liability against TE, she also does not allege TE's negligence.  Thus, the Fifth and Sixth Causes of Action of the Second Amended Complaint purporting to allege forms of negligence did not do so and are dismissed.  TE's Motion (id.) to Dismiss these claims is granted.

### 5.  Breach of Warranties

Plaintiff has not responded to arguments for dismissal of her breach of warranty claims, such as not addressing the absence of pre-suit notice of her claiming warranty liability required under U.C.C. § 2-607(3)(a).  Plaintiff has not stated the terms of the express warranty TE alleged furnished for its part.

Had Plaintiff addressed her warranty claims, they still would fail.  Greenwood's breach of express warranty claim fails because she does not allege the terms of any warranty from TE.  Her express warranty claim is like the claim of express warranty dismissed in Hingos because nowhere in Hailey Hingos' proposed amended complaint did she "allege the exact terms of the warranty or to whom it was made," Hingos, supra, 2017 WL 3309095, at *6.

As in Miccio, Plaintiff did not allege an express breach of warranty.  The court in Miccio concluded that the advertisement Miccio cited as an express warranty could not "be reasonably read as an express statement about or promise as to the product's safety," Miccio, supra, 224 F. Supp.3d at 207, 208.  Greenwood in the present case alleges only that TE made "certain warranties, both express and implied" (Docket No. 13, 2d Am. Compl. ¶ 60) without stating what the express warranty was.  She does cite to TE's

website and its declaration of TE's global sales (id. ¶ 53) but does not allege there (or elsewhere) that TE warranted its parts to Arthrex or third parties.

Thus, the express and implied warranty claims in the Seventh Cause of Action of the Second Amended Complaint against TE are dismissed.  TE's Motion to Dismiss (Docket No. 18) those claims is granted.

### 6.  Summary of Substantive Claims against TE

Plaintiff merely repeats her allegations against Arthrex and applies them against TE.  She does not allege how TE's heat shrink tubing injured her or how it was designed or manufactured in a deficient manner.  She makes conclusory allegation of express and implied warranties from TE without stating what those warranties were.  Plaintiff has not alleged a strict liability or negligence claim against TE.

Therefore, Plaintiff's claims against TE stated in the Fifth through Eighth Causes of Action of the Second Amended Complaint is dismissed.  TE's Motion to Dismiss (Docket No. 18) is granted.

### 7.  Leave to Amend Again

TE urges that this Court deny Plaintiff leave to amend the Complaint for a third time (Docket No. 25, TE Reply Memo. at 2, 7).  Plaintiff has not argued alternatively for leave to amend or suggest changes to her allegations to address TE's arguments.  She had amended her Complaint twice and had not properly alleged claims against TE in these amended pleadings.  Thus, dismissal of the Causes of Action against TE are with prejudice.

## IV.    Conclusion

Despite its nomenclature, Plaintiff did not actually move for jurisdictional discovery from TE (<u>cf.</u> Docket No. 23) and TE has not argued jurisdictional grounds for its Motion to Dismiss to warrant jurisdictional discovery.   Plaintiff's ostensible Cross-Motion for Jurisdictional Discovery from TE (<u>id.</u>) is denied.

Plaintiff's Cross-Motion for Jurisdictional Discovery from Precision Edge (Docket No. 22) also is denied.

Precision Edge's Motion to Dismiss (Docket No. 20) is granted.   TE's Motion to Dismiss (Docket No. 18) also is granted with prejudice.

Plaintiff still alleges claims against Arthrex.   This case shall be referred to a Magistrate Judge for further pretrial proceedings of Plaintiff's action against Arthrex.

## V.    Orders

IT HEREBY IS ORDERED, that Plaintiff's Cross-Motion for Jurisdictional Discovery from TE Connectivity Corporation (Docket No. 23) is DENIED.

FURTHER, that Plaintiff's Cross-Motion for Jurisdictional Discovery from Precision Edge Surgical Products Company LLC (Docket No. 22) DENIED.

FURTHER, that TE Connectivity Corporation's Motion to Dismiss (Docket No. 18) is GRANTED, with prejudice.

FURTHER, that Precision Edge Surgical Products LLC's Motion to Dismiss (Docket No. 20) is GRANTED.

FURTHER, that the Court Clerk is DIRECTED to enter judgment in favor of TE Connectivity Corporation and Precision Edge Surgical Products LLC, dismissing them from this case.

SO ORDERED.


Dated:        June 13, 2022
              Buffalo, New York


                                                  s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                               United States District Judge